CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
February 11, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **MARVIN HARRIS,** | ) |
| | ) |
| Plaintiff, | ) Case No. 7:22CV00582 |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| **INVESTIGATOR CHRISTOPHER ROSEMEIER, ET AL.,** | ) JUDGE JAMES P. JONES |
| | ) |
| Defendants. | ) |

*Amina Matheny-Willard*, AMINA MATHENY-WILLARD, PLLC, Norfolk, Virginia, for Plaintiff; *Brittany E. Shipley*, TIMBERLAKESMITH, Staunton, Virginia, for Defendants.

Plaintiff Marvin Harris brings this action under 42 U.S.C. § 1983, alleging that the defendants Christopher Rosemeier, Christopher Hilliard, Jonathan Wells, and Charles Taylor, Jr., employees of the Augusta County, Virginia, Sheriff's Department, used excessive force when they arrested him on a warrant after a traffic stop. Following discovery, the defendants have moved for summary judgment. For the reasons that follow, I will deny the motion.

I. BACKGROUND.

The following facts taken from the summary judgment record are uncontested. On July 27, 2020, Harris was indicted in the Augusta County Circuit Court on one count of felonious methamphetamine distribution. The following day, the state court

issued a capias for his arrest. On October 8, 2020, at around 10:30 p.m., Harris was riding in the passenger seat of a friend's vehicle. Unbeknownst to Harris, his friend was a confidential informant and had told local investigators that she would be driving through the area with Harris. Based on this information, Wells and another deputy, who is not a defendant in this case, pulled the vehicle over.

The deputies approached the passenger side of the vehicle, where Harris was sitting with his seatbelt on and the window partially rolled down. Wells asked Harris to identify himself, but Harris declined. Rosemeier arrived at the scene and climbed onto the vehicle's step rail so he could reach through the window into the vehicle. After contact with Harris, Rosemeier fell off the step rail. The officers then tased Harris and Hilliard punched him in the nose and then opened the passenger door. Once Harris was outside the vehicle, he was tased at least two more times and handcuffed. On August 12, 2022, Harris pleaded guilty in state court to two counts of Assault on a Law Enforcement Officer based on the events in this case.

Nearly all other facts in the summary judgment record are in dispute. Contrary to the plaintiff's claim, the defendants assert that Harris refused multiple orders to exit the vehicle. When Rosemeier then attempted to remove Harris from the vehicle, Harris, who is 6'2' in height and weighted 220 pounds, punched him with his fist in the face. In response, the officers tased Harris, who "put both of his fists up in a fighting position." Defs.' Mem. Supp. Mot. Summ. J. Ex. F, Hilliard Resp. Interrog.

¶ 7, ECF No. 64-6.  Harris exited the vehicle "swinging both fists in the deputies' direction" while they retreated.  *Id.*  As Harris approached Hilliard, Wells tased Harris in the back, which caused Harris to fall on top of Rosemeier.  Once Harris was on the ground, he continued to resist being placed in handcuffs.  Hilliard placed a hand on Harris' back to stop him from breaking free.  The officers were still unable to place Harris in handcuffs, so Rosemeier tased him again to gain compliance.  When Harris ultimately stated that he could not breathe, the officers stood him up so he could catch his breath.

Harris' account contrasts significantly with that of the deputies.  According to Harris, he was never asked to exit the vehicle or remove his seatbelt.  After Harris politely declined to give his name, Rosemeier ran up to the vehicle, reached through the window, and thumbed Harris in the eye.  In response, Harris put his hands up in a "defensive posture," which caused Rosemeier to fall off the side of the vehicle.  Pl.'s Mem. Opp'n Mot. Summ. J. 3, ECF No. 68.  Rosemeier and Wells then tased Harris, which left him temporarily unable to move.

Harris further alleges that he was still motionless in the vehicle when Hilliard punched him, removed his seatbelt, and threw him to the ground, at which point the officers placed him in handcuffs.  While Harris was handcuffed and on the ground, both Taylor and Rosemeier tased him and Rosemeier punched him repeatedly in the back.  A deputy then lifted Harris off the ground so that Hilliard could kick him in

– 3 –

the head several times, which caused Harris to lose consciousness.[1] Consequently, Harris alleges that he suffered fractures to bones in his face, contusions, and damage to several teeth. He claims that these injuries have resulted in ongoing headaches.

## II. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). [T]he aim of summary judgment is not to determine the exact strength of a case and dispose of so-called weak cases, but instead to determine whether a rational jury *could* find in the plaintiff's favor." *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 412 (4th Cir. 2022). Accordingly, I must "examine the course of a plaintiff's conduct through a panoramic lens, viewing the individual scenes in their broader context and judging the picture as a whole." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015).

### A. Local Civil Rule 56(b).

Harris first contends that the defendants' Motion for Summary Judgment should be denied because their Memorandum did not include a separately captioned list of undisputed facts pursuant to Local Civil Rule 56(b). Under Local Rule 56(b), "[a]ny motion for summary judgment . . . must contain a separately captioned section

---

[1] Hilliard claims that his "foot was never near the plaintiff's face" during the incident. Defs.' Mem. Supp. Mot. Summ. J. Ex. J. Hilliard Decl. ¶ 5, ECF No. 64-10.

setting forth with specificity the material facts claimed to be undisputed together with specific record citations in support thereof." Although it contained a general fact summary, the defendants' brief failed to include a separate section of undisputed facts. After the plaintiff brought this failure to the attention of the court in his response, the defendants did include a separately captioned facts section in their reply brief.

"District courts have broad discretion in interpreting and applying their local rules." *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983)). Local rules like the one in question aim "to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (considering a similar local rule). A violation of this type of rule "lies at the more serious end of the spectrum of noncompliance because such rule originates from the burden that the Federal Rules of Civil Procedure impose on a party moving for summary judgment." *CertusView Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13CV346, 2015 WL 4717256, at *5 (E.D. Va. Aug. 7, 2015). Still, local rules are "not intended to provide a maze of technical traps to complicate

– 5 –

and delay litigation without advancing the merits." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

The facts that the defendants listed in their reply brief closely mirror the facts set out in their Memorandum. Thus, Harris was able to address the defendants' contentions in his response, even though he did not have the benefit of a separately captioned section. Further, there is no suggestion that the defendants omitted a fact section in an attempt to mislead Harris or the court.

Attorneys practicing in this court are expected to know and obey the local rules, all of which are easily available on the court's website. The rule in question serves to promptly focus the attention of the parties on this crucial element of summary judgment, thus saving the time and resources of the parties and the court. While I do not condone the failure here, I do not find, based on the circumstances, that the defendants' violation of Local Rule 56(b) warrants a sanction.

## B. Use of Force.

The defendants contend that there is no genuine issue of material fact on which a reasonable jury could find that they used excessive force when they arrested Harris. I disagree.

An officer's use of force on arrest is weighed under the Fourth Amendment and does not violate the Constitution if it is objectively reasonable in light of the facts and circumstances. *Graham v. Connor*, 490 U.S. 386, 388 (1989). This

analysis requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). Three factors guide the court's objective reasonableness inquiry: (1) "the severity of the crime"; (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others"; and (3) whether the suspect was actively resisting arrest or attempting to flee. *Id.* Importantly, the court must judge the defendant's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The court's reasonableness assessment must make "allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 397.

Viewed in the light most favorable to Harris, deputies punched and tased Harris while he sat passively in the vehicle. Harris claims that even when he was handcuffed and pressed against the ground, deputies tased, punched, and kicked him to the point of unconsciousness. Under the Fourth Amendment standard, a reasonable jury could conclude that the defendants used excessive force under these circumstances.

I agree with the defendants that Harris' deposition testimony about the events is not a model of consistency. Moreover, Harris later pleaded guilty to assaulting an

officer for which he received a sentence of eleven months' imprisonment. That evidence may also damage his credibility, although he says that he entered the negotiated plea only to avoid a likely harsher sentence and because of his mother's cancer diagnosis, for which she needed his care. In any event, the truthfulness of Harris' testimony is a matter for the jury.

### C. Qualified Immunity.

Finally, I turn to the issue of whether the defendants are entitled to qualified immunity. The defendants argue that they are entitled to qualified immunity because they "had the authority to use force to effectuate the arrest of Plaintiff" and their use of force was "objectively reasonable." Defs.' Mem. Supp. Mot. Summ. J. 19, ECF No. 64.

The doctrine of qualified immunity protects government officials from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit rather than merely immunity from liability, and a defendant asserting qualified immunity has the burden of proving the defense. *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013).

An officer is entitled to qualified immunity if the court finds that either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements

necessary to state a violation of a constitutional right; or (2) the right was not clearly established such that it would not have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (internal quotation marks and citation omitted); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that court may determine which facet of qualified immunity analysis to consider first).

Qualified immunity is subject to "the ordinary rules applicable to summary judgment proceedings." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)). If there is a genuine factual dispute "respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial." *Pritchett*, 973 F.2d at 313 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). When a factual dispute "precludes a conclusive ruling on qualified immunity at the summary judgment stage, the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury." *Willingham*, 412 F.3d at 560.

As discussed above, Harris and the defendants present contrasting factual accounts of the incident at issue in this case. As a result, the summary judgment

record lacks sufficient undisputed facts at this point to determine whether the defendants are entitled to qualified immunity.

### III. CONCLUSION.

For the foregoing reasons, the Motion for Summary Judgment, ECF No. 63, is DENIED.

It is so **ORDERED**.

ENTER: February 11, 2025

/s/ JAMES P. JONES
Senior United States District Judge